**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**

JOHN DOE, individually and on behalf of all
others similarly situated,

|                          | File No.: 20-414 |

Plaintiff,

File No.: 20-414

JURY TRIAL DEMANDED

v.

DUKE UNIVERSITY,

Defendant.

**COMPLAINT – CLASS ACTION**

# TABLE OF CONTENTS

**Page**

I. NATURE OF ACTION ........................................................................................ 1

II. JURISDICTION AND VENUE ............................................................................ 2

III. PARTIES ............................................................................................................ 3

IV. FACTS ............................................................................................................... 5

    A. Background ............................................................................................. 5

    B. The Novel Coronavirus Shutdowns And Defendant's Campus Closure ................ 9

    C. Defendant's Refusal To Issue Tuition And/Or Fee Refunds ................................. 14

V. CLASS ACTION ALLEGATIONS ..................................................................... 15

VI. CAUSES OF ACTION ....................................................................................... 19

    COUNT I BREACH OF CONTRACT .................................................................. 19

    COUNT II UNJUST ENRICHMENT ................................................................... 21

    COUNT III CONVERSION ................................................................................. 22

PRAYER FOR RELIEF .......................................................................................... 23

JURY DEMAND ..................................................................................................... 24

Plaintiff, JOHN DOE, individually and on behalf of all others similarly situated, for his Class Action Complaint against Defendant Duke University ("Duke"), based upon personal knowledge as to his own actions and based upon the investigation of counsel regarding all other matters, complains as follows:

## I. NATURE OF ACTION

1. This Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1] Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and universities across the country to shut down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2. Despite sending students home and closing its campus(es), Defendant continues to charge for tuition, fees, and/or room and board as if nothing has changed, continuing to reap the financial benefit of millions of dollars from students. Defendant does so despite students' complete inability to continue school as normal, occupy campus buildings and dormitories, or avail themselves of school programs and events. So while students enrolled and paid Defendant for a comprehensive academic experience, Defendant instead offers Plaintiff and the Class Members something far less: a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. To minimize the burden on the Court and to reasonably accommodate Defendant, Plaintiff will work with Defendant to reach an agreeable schedule for their response to this Class Action Complaint.

Case 1:20-cv-00414-WO-JEP   Document 1   Filed 05/08/20   Page 3 of 27

interaction, separated from program resources, and barred from facilities vital to study. Plaintiff and the Class Members did not bargain for such an experience.

3.      While some colleges and universities have promised appropriate and/or proportional refunds, Defendant excludes itself from such other institutions treating students fairly, equitably, and as required by the law. And for some student and families, Defendant does so based on outdated financial aid equations and collections, without taking into account disruptions to family income, a particular concern now where layoffs and furloughs are at record levels.

4.      As a result, Defendant's actions have financially damaged Plaintiff and the Class Members. Plaintiff brings this action because Plaintiff and the Class Members did not receive the full value of the services paid and did not receive the benefits of in-person instruction. They have lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## II.      JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and

costs. Plaintiff alleges that the total claims of individual Class members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiff is a citizen of Minnesota, whereas Defendant is a citizen of North Carolina for purposes of diversity. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than North Carolina, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).[2]

6.     Venue is appropriate in this District because Defendant is located within the Middle District of North Carolina. And on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

### III.    PARTIES

7.     Plaintiff JOHN DOE is a citizen and resident of the State of Minnesota. Plaintiff Doe was enrolled as a full-time student for the Spring 2020 academic term at Defendant. Plaintiff is in good financial standing at Defendant, having paid in whole or in combination tuition, fees, costs, and/or room and board charges assessed and demanded by Defendant for the Spring 2020 term. Plaintiff paid Defendant for opportunities and

---

[2] Only 13.4% of Duke undergraduates are from North Carolina.
https://www.collegefactual.com/colleges/duke-university/student-life/diversity/chart-geographic-diversity.html.

services that he will not receive, including on-campus education, facilities, services, and activities.

8. In matriculating at Duke University, Plaintiff, like other students, chose to enroll for in-person classes to obtain a hands-on educational experience, avail himself of top academic instruction, and directly interact with faculty and classmates to increase his knowledge and understanding of the subject material.

9. Following spring break, Defendant barred Plaintiff and other students from campus, evicted them from the dormitories in which they resided, and shifted all classes to remote learning.

10. Following the closure of Defendant's campus(es) and the shift to online only education, Plaintiff suffered a direct loss and did not receive his bargained for academic experience.

11. For example, Plaintiff enrolled in a lab class that provided him with direct, hands-on interaction with specific technology directly applicable to his course of study. Likewise, Plaintiff regularly utilized Duke's gym facilities. And he also utilized the library system, including its Bloomberg terminals. However, with the closure of Duke's campus, Plaintiff could no longer access such technology or facilities.

12. Similarly, Plaintiff's lecture-based classes immediately decreased in quality as well. One of Plaintiff's lectures went from in-person sessions to pre-recorded lectures. With such shifts, all opportunities for his professors to adapt the lecture to facilitate student understanding were lost. Another of Plaintiff's lectures lost a key interactive

component between students and the professor that emphasized key points of understanding.

13. Plaintiff's interactions with professors and his classmates have also suffered. Whereas Plaintiff could previously bounce ideas off professors that were world-renowned experts in their field, such opportunities no longer exist. Instead, such attempts at communication are now restricted to email, with an estimated ten-fold increase in response time. Likewise, Plaintiff has lost his opportunity and ability to interact with his classmates, such as to assist each other in an effort to understand the materials covered by a professor on any given day. And for those classes requiring group projects, such work has also suffered, with one group falling completely apart and the other relying heavily on the professor's guidance, which was almost entirely lost.

14. Though Plaintiff was also involved in student activities, such activities have completely ceased or have suffered due to the remote nature of the activities.

15. Defendant Duke University is an institution of higher learning located in Durham, North Carolina. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charges Plaintiff and the Class Members.

## IV.     FACTS

### A.     Background

16. Founded in 1924, Duke University has a current enrollment of approximately 15,634 students, across 10 schools and colleges.

17.     As of June 30, 2019, Defendant's endowment totaled $8.6 billion and the university ended the fiscal year with assets totaling more than $21.558 billion. Defendant collected $519.245 million in tuition and fees—a $12.237 million increase from the year before—with Defendant's total operating revenues totaling $6.784 billion, exceeding operating expenses by $248.541 million.

18.     Duke Forward, the largest fundraising campaign in Duke University history, concluded on June 30, 2017, raising $3.85 billion over the previous seven years. Record giving by more than 315,000 donors and foundations helped propel Duke Forward past its original goal of $3.25 billion.[3]

19.     While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see*, *e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Defendant is not such a school.

20.     Rather, a significant focus of Defendant's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff.

21.     A few examples of such efforts to promote that experience follow.

22.     In recruiting students, Duke states "[w]ith exceptional academics, enviable spirit, and a community of support, there's no school quite like Duke."[4] Duke "looks for

---

[3] https://facts.duke.edu/.

[4] https://admissions.duke.edu/.

Case 1:20-cv-00414-WO-JEP   Document 1   Filed 05/08/20   Page 8 of 27

students who operate at the intersection of imagination and impact—students who are unafraid to undertake things that are messy, complex, and outside their comfort zone."[5]

23.     And such students ordinarily interact directly with faculty, aided by an 8:1 student-to-faculty ratio: "At Duke, you'll be surrounded by some of the world's brightest minds. But you won't just be studying with them—you'll be working with them. After all, the world's toughest problems won't be solved by isolated individuals but rather through interdisciplinary exploration, unconventional thinking, and serious collaboration."[6] And to facilitate such interactions, Duke even allots every student with $70 per semester to invite a faculty member to dine around campus "to help establish lasting relationships that might not have developed in the classroom."[7]

24.     Furthermore, touting its campus, Duke notes that its "campus of 8,600+ acres gives students space to roam—both physically and intellectually. But it isn't just the setting that makes Duke unlike any other university. It's the feeling—the kinetic energy of connections forged, creativity sparked, and ideas born. It's an electricity that inspires passion and action."[8] Indeed, Duke promotes its efforts to cultivate a "community feel" where students will "always be striking up new connections. Where you live, sleep, and eat matters for your academic life and your overall experience and you'll find that with

---

[5] https://admissions.duke.edu/our-students.

[6] https://admissions.duke.edu/academic-life/.

[7] https://admissions.duke.edu/academic-life/.

[8] https://admissions.duke.edu/campus-life.

Case 1:20-cv-00414-WO-JEP   Document 1   Filed 05/08/20   Page 9 of 27

late-night hallway chats and second dinners, the Gothic Wonderland quickly starts to feel like home."[9] Such campus facilities "include collaborative study spaces, classrooms, and seminar rooms equipped with whiteboards and the latest technology to help promote interdisciplinary, team-based, and data-driven research at Duke" and lab facilities, such as the Innovation Co-Lab, "which houses cutting-edge tools such as 3-D printing, VR, and biometrical analysis [to] foster[] creativity."[10]

25.     Duke's individual schools also promote face-to-face interaction combined with utilizing top facilities. For example, Duke's Pratt School of Engineering provides students with "a unique opportunity at Duke to be part of a smaller school," where students "receive close faculty interaction, gain a strong sense of teamwork, and develop lifelong connections."[11] Duke also strives to provide students with "an opportunity for hands-on research experience," believing "this is a critical part of helping students learn and to find a career."[12] Similarly, Duke's Trinity College of Arts & Sciences emphasizes the value provided to students by interaction: "We will teach the skills needed to work in teams and thrive, to think critically and explore different perspectives, to write persuasively, to analyze with precision, and to develop high order reasoning and independent thought."[13]

_____

[9] https://admissions.duke.edu/living-dining-and-wellness/.

[10] https://admissions.duke.edu/academic-life/.

[11] https://pratt.duke.edu/undergrad/admissions.

[12] *Id.*

[13] https://trinity.duke.edu/academics-advising/undergraduate/applicants.

-8-

26.     To obtain such educational opportunities and activities, Plaintiff and the Class Members pay, in whole or in part, significant tuition, fees, and/or room and board.

27.     For example, for the Spring term 2020, Defendant assessed undergraduates with $27,940 in tuition, a $137.75 Student Activity Fee, a $312.50 Student Services Fee, a $158 Recreation Fee, and a $417 Health Fee, with housing ranging from $4,462 to $5,894 and board/dining ranging from $760 to $3,307.

28.     Such charges for study are significantly higher than online only programs.

29.     Schools delivering an online-only educational experience assess significantly discounted rates for delivering such educational services. For example, Western Governor's University charges flat-rate tuition at $3,370 per term while Southern New Hampshire University charges $960 per course for online undergraduate programs and $1,881 per course for online graduate programs.

**B.      The Novel Coronavirus Shutdowns And Defendant's Campus Closure**

30.     On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19.

31.     By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

32.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

33.     By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

34.     Travel and assembly restrictions began domestically in the United States on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of April 6, 2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District of Columbia, and Puerto Rico are being urged or directed to stay home.

35.     On or about March 10, 2020, Defendant decided to effectively begin to close its campus(es), migrating all or substantially all classes online, directing that "all on-campus classes will be suspended until further notice, and we will transition to remote instruction (video and other forms of delivery) for all undergraduate, graduate and professional schools."[14] To provide time for students and faculty to make this transition, Duke extended spring break to Sunday, March 22 and classes will resume on Monday, March 23."[15] And for those students away from campus, Duke directed them not to

---

[14] https://coronavirus.duke.edu/2020/03/community-update-changes-to-spring-break-and-classes-new-travel-restrictions/

[15] *Id.*

return.[16] In doing so, Duke conceded that "this presents a significant disruption to everyone's studies, research and work . . . ."[17]

36. By March 13, 2020, Duke officially suspended residential activities for the remainder of the Spring 2020 semester.[18] Duke explained "[c]lasses will not take place on the Duke campuses and, with rare exception, students will be required to vacate campus housing and return home to complete their academic requirements through the remote teaching and learning that will begin on March 23 for undergraduates."[19] It also explained to faculty that "[t]he transition from in-person to remote course delivery is a daunting one…"[20] And all buildings went to controlled-access status.[21]

37. Moreover, Duke has restricted all on-campus events through June 30, 2020.[22]

38. Though the reasons for such closures are justified, the fact remains that such closures and cancellations present significant loss to Plaintiff and the Class Members.

---

[16] *Id.*

[17] *Id.*

[18] https://coronavirus.duke.edu/2020/03/important-update-for-undergraduate-students/.

[19] https://coronavirus.duke.edu/2020/03/updates-on-schedules-campus-and-building-access-for-all-students-faculty-and-staff/.

[20] *Id.*

[21] *Id.*

[22] https://coronavirus.duke.edu/2020/04/events-restricted-through-june-30/.

39.     College students across the country have offered apt descriptions of the loss they have experienced as a result of the pandemic, highlighting the disparity between students' bargained for educational experience and the experience that colleges and universities, including Defendant, now provide.

40.     For example, as reported in The Washington Post, one student "wonders why he and others . . . are not getting at least a partial tuition refund. Their education, as this school year ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social experience students imagined when they enrolled. But tuition remains the same: $27,675 per semester . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from New Jersey. 'But at the end of the day, it's not the same as in-person learning . . . It shouldn't just be a part of the business model where, no matter what happens, you have to pay the same amount. The cost needs to reflect some of the realities.'"[23]

41.     As another example, as reflected in a Change.org petition, with nearly 5,000 supporters, students at another major university highlight the loss experienced by students: "As a result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of emergency in Illinois. In response, Northwestern University made the sensible decision to offer all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of the quarter as the situation worsens. While this is

_____

[23] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

certainly the right call to ensure the health and safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by switching to online education for potentially an entire term. For the following reasons, we are seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter. Since Northwestern is a top private university, the estimated annual cost of attendance of $78,654 goes towards a comprehensive academic experience that cannot be fully replicated online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no longer have access to invaluable face-to-face interaction with faculty, resources necessary for specific programs, and access to facilities that enable learning."[24]

42.     Another university's student newspaper reflects another example: "At this time, most of the campus and dorms need not be rigorously maintained. No events will be held, nor speakers hosted. The world-class education that consists in having opportunities to work and interact with academics and peers (not to mention the vast numbers of innovators, creators, doctors, organizers, and more that congregate on our campus) will no longer be provided."[25]

43.     The independent student publication, The Duke Chronicle, has repeatedly published regarding the impact on education from the transition to remote learning.

---

[24] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.

[25] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.

44.     For example, one professor described the connection with students that would allow him to adapt his educational approach based on student-reactions: "'There's a connection with the people you're talking to. You see those 'aha' moments, you see them when they're not understanding and you react based on that,' he said."[26] Another professor explained "'I think that sharing the physical and communal space of the classroom is an important part of thinking and learning with other people. We need that space of connection.'"[27] Instead, classes have been described as "'speaking into dead space' and live Zoom classes, when most students have their cameras turned off, as 'talking to a wall of black boxes.'"[28]

## C.     Defendant's Refusal To Issue Tuition And/Or Fee Refunds

45.     Given Defendant's transition to online classes and COVID-19 concerns, Defendant asked students to vacate student housing.

46.     Defendant has agreed to prorate housing for the period March 13–May 10 and any unused dining account funds in the forms of credits for returning students and refunds for graduating students.[29] It also agreed to credits for student parking permit fees mid-March through mid-August 2020.[30]

---

[26] https://www.dukechronicle.com/article/2020/04/duke-university-class-dead-space-research-professors-impacts-coronavirus-online-class.

[27] *Id.*

[28] *Id.*

[29] https://coronavirus.duke.edu/2020/04/message-for-students-and-parents-about-credits-and-refunds/.

[30] https://coronavirus.duke.edu/2020/04/credit-provided-for-student-parking-fees/.

-14-

47.    However, other than these limited scope refunds, Defendant has not announced refunds for Spring 2020 tuition and has refused to give a prorated refund for non-parking related fees paid for student services that students cannot use because those services were curtailed, eliminated, or because the student followed the university's instruction to leave the campus and return home.

48.    Notably, while Duke cancelled all in-person summer sessions and announced that the summer sessions will be exclusively online, it significantly reduced course rates. As reported in the Duke Chronicle: "Rates for summer course have also been trimmed, to $2,500 for a non-lab class and $3,200 for a class involving a lab or recitation, according to an FAQ page about Summer Session changes. Tuition for Summer Session courses is normally $3,579 for classes without labs and $4,772 for some science and engineering classes with labs, according to the Summer Session website."[31]

## V.    CLASS ACTION ALLEGATIONS

49.    Plaintiff sues under Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Class defined as follows:

> All persons enrolled at Defendant for the Spring 2020 term who paid Defendant, in whole or in part, tuition, fees, and/or room and board for in-person instruction and use of campus facilities, but were denied use of and/or access to in-person instruction and/or campus facilities by Defendant.

---

[31] https://www.dukechronicle.com/article/2020/04/duke-university-summer-session-cut-cost-online-courses.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further excluded from the Class is this Court and its employees. Plaintiff reserves the right to modify or amend the Class definition including through the creation of sub-classes if necessary, as appropriate, during this litigation.

50.     The definition of the Class is unambiguous. Plaintiff is a member of the Class Plaintiff seeks to represent. Class Members can be notified of the class action through contact information and/or address lists maintained in the usual course of business by Defendant.

51.     Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's records, however, given the thousands of students enrolled at Defendant in a given year, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

52.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

53.     Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

54.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

   a.     Whether Defendant engaged in the conduct alleged;

   b.     Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiff and the Class Members;

   c.     Whether Defendant breached identical contracts with Plaintiff and the Class Members;

   d.     Whether Defendant violated the common law of unjust enrichment;

   e.     Whether Defendant converted Plaintiff and the Class Members refunds and/or rights to refunds; and

   f.     The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

55. The Class Members have been damaged by Defendant through its practice of denying refunds to Class Members.

56. Plaintiff's claims are typical of the claims of the other Class Members under Rule 23(a)(3). Plaintiff is a student enrolled at Defendant in the Spring 2020 term. Like other Class Members, Plaintiff was instructed to leave Defendant's campus, forced to take online classes, and has been completely or partially denied a refund for tuition, fees, and/or room and board.

57. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class Members he seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

58. The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members under Rule 23(b)(3). The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to

seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

59.    In addition, under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

60.    Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims of Plaintiff and the Class Members in this forum given that Defendant is located within this judicial district and discovery of relevant evidence will occur within this district.

61.    Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

## VI.    CAUSES OF ACTION

### COUNT I

### BREACH OF CONTRACT

62.    Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

63.    Plaintiff and the Class Members entered into identical, binding contracts with Defendant.

64.    Under their contracts with Defendant, Plaintiff and the members of the Class paid Defendant tuition, fees, and/or room and board for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services.

65.    Plaintiff and the Class Members have fulfilled all expectations, having paid Defendant for all Spring 2020 term financial assessments.

66.    However, Defendant has breached such contracts, failed to provide those services and/or has not otherwise performed as required by the contract between Plaintiff and the Class Members and Defendant. Defendant has moved all classes to online classes, has restricted or eliminated Plaintiff and the Class Members' ability to access university facilities, and/or has evicted Plaintiff and the Class Members from campus housing. In doing so, Defendant has, and continues to, deprive Plaintiff and the Class Members from the benefit of their bargains with Defendant.

67.    Plaintiff and the Class Members have been damaged as a direct and proximate result of Defendant's breach.

68.    Plaintiff and members of the Class are entitled to damages, including but not limited to tuition refunds, fee refunds and/or room and board refunds.

## COUNT II

## UNJUST ENRICHMENT

## (As Alternative to Breach of Contract)

69.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

70.     At all times relevant hereto, Plaintiff and the Class Members directly conferred non-gratuitous benefits on Defendant, *i.e.*, monetary payments for tuition, fees, and/or room and board, so that Plaintiff and the Class Members could avail themselves of in-person educational opportunities and utilize campus facilities, including campus dormitories.

71.     Defendant knowingly accepted the benefits conferred upon it by Plaintiff and the Class Members.

72.     Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

73.     Defendant accepted or retained the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class, with full knowledge and awareness that, because of Defendant's unjust and inequitable actions, Plaintiff and members of the Class are entitled to refunds for tuition, fees, and/or room and board.

74.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

75. Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to, and seek disgorgement and restitution of, the benefits unjustly retained whether in whole or in part, including through refunds for tuition, fees, and/or room and board.

**COUNT III**

**CONVERSION**

76. Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

77. Plaintiff and the other members of the Class have an undisputed right to receive educational services, activities, and access to Defendant's facilities for the Spring 2020 term. Plaintiff and the Class Members obtained such rights by paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

78. Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while, Defendant has unlawfully retained the monies Plaintiff and the Class Members paid Defendant as well as barred Plaintiff from Defendant's facilities.

79. Defendant deprived Plaintiff and the other Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board.

80. Plaintiff and/or Class Members have requested and/or demanded that Defendant issue refunds.

81. Defendant's interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in that they paid for rights, benefits, services, and/or facility access, but Defendant has deprived Plaintiff and members of the Class of their rights, benefits, services, and/or facility access.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or judgment against Defendant including:

A. Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and his counsel of record as Class Counsel;

B. Damages in the amount of unrefunded tuition, fees, and/or room and board;

C. Actual damages and all such other relief as provided under the law;

D. Pre-judgment and post-judgment interest on such monetary relief;

E. Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

F.      The costs of bringing this suit, including reasonable attorney's fees; and

G.      All other relief to which Plaintiff and members of the Class may be entitled

by law or in equity.

**JURY DEMAND**

Plaintiff demands trial by jury on his own behalf and on behalf of Class Members.

Dated: May 6, 2020                    Respectfully submitted,

By: /s/ J. Michael Malone
J. Michael Malone
North Carolina State Bar No. 26512
Hendren, Redwine & Malone, PLLC
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
(919) 420-7867 Phone
(919) 420-0475 Fax
mmalone@hendrenmalone.com

Steve W. Berman (*Pro Hac Vice* Forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski (*Pro Hac Vice* Forthcoming)
Whitney K. Siehl (*Pro Hac Vice* Forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

-with-

Andrew S. Levetown
IVEY & LEVETOWN, LLP
6411 Ivy Lane, Suite 304
Greenbelt, MD 20770
(703) 618-2264
asl@iveylevetown.com

*Attorneys for Plaintiff, individually and on
behalf of all others similarly situated.*